IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHRISTOPHER EARL PEEK, | |
| Plaintiff pro se, | CIVIL ACTION FILE |
| v. | NO. 1:20-CV-0367-ELR-WEJ |
| PHH MORTGAGE SERVICES CORP., *Its Subsidiaries, affiliates, and Assigns*, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff pro se, Christopher Earl Peek, is proceeding in forma pauperis [2]. On February 10, 2020, the Court ordered plaintiff to file an amended complaint more definitely stating his claims on or before February 24, 2020 so that the Court could conduct a frivolity review. Plaintiff filed his Amended Complaint [9] on February 24, 2020. Therefore, this matter is before the Court for a frivolity review of the Amended Complaint to determine whether the action is subject to sua sponte dismissal. See 28 U.S.C. § 1915(e)(2). Plaintiff alleges that defendant, PHH Mortgage Services Corp. ("PHH"), failed to process his mortgage modification application timely in violation of the Equal Credit Opportunity Act ("ECOA"), 15

U.S.C. § 1691 et seq., the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2600 et seq., the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. (See generally Am. Compl.) Plaintiff also seeks a declaratory judgment as to his ECOA and RESPA claims. (Id. at 14.) The undersigned **REPORTS** that plaintiff's claims against defendant under the ECOA, the FDCPA, and the FCRA are frivolous, and that plaintiff's request for a declaratory judgment is moot. The undersigned **RECOMMENDS** that those claims be **DISMISSED WITHOUT PREJUDICE**. Furthermore, the undersigned **RECOMMENDS** that plaintiff be allowed to proceed on his claims for alleged violations of the RESPA.

I.    PLAINTIFF'S ALLEGATIONS

Plaintiff, who is African American, obtained a mortgage on the property at issue in the amount of $250,000. (Am. Compl. 2.)[1] Although the Amended Complaint states that defendant is plaintiff's original creditor, the alleged facts suggest that PHH is the loan servicer. (See id. at 2, 4.) Plaintiff began experiencing economic and career hardships and sought new credit or a mortgage modification

---

[1] Because all paragraphs of the Complaint are not numbered, the Court references the Complaint's internal page numbers.

with defendant most recently on January 13, 2020. (Id. at 3, 7-8.)  Plaintiff timely paid the mortgage note until around March 2019. (Id. at 2-3.)

Plaintiff applied to defendant for a mortgage loan adjustment in March and April of 2019 and, most recently, on January 13, 2020. (Am. Compl. 3, 7-8.) Plaintiff contacted defendant at least a dozen times after every application regarding its failure to process his application. (Id. at 3, 5, 7-9, 13.)[2] Plaintiff also informed defendant in writing of errors in the application or accrual of payments for the modification, errors in credit reporting, errors in reporting mortgage balances and escrow payments, and other items that were not corrected. (Id. at 16.) Defendant confirmed that plaintiff's application was complete on March 12 and again on March 19 and stated that all proceedings in foreclosure would be stayed, suspended, or withdrawn while the application was active. (Id. at 3, 7-9.)

Due to an April 1, 2019 merger or transfer, defendant did not process plaintiff's application until late June. (Am. Compl. 3, 9.) Defendant sent plaintiff a letter dated July 23 researching a credit request made in March and stated that it

---

[2] Plaintiff claims that defendant did not process his January 13, 2020 application within 30 days.  At the time plaintiff filed his original Complaint, only 14 days had passed since his January 13, 2020 application.

had mailed plaintiff a denial of his application on May 2. (Id. at 9.) Plaintiff did not receive any such letter from defendant in May or June. (Id. at 9.)

In November of 2019, plaintiff sought a loss mitigation application from defendant. (Am. Compl. 10.) Defendant replied to plaintiff's request on December 24, 2019. (Id.) Plaintiff learned in a phone call on or near January 7, 2020 that defendant was initiating foreclosure. (Id.) Plaintiff claims he was never informed that defendant was initiating foreclosure. (Id.)

Plaintiff alleges that defendant's actions caused him emotional distress, damaged his reputation and credit standing, and made it difficult for him to find employment in his field. (Am. Compl. 10.) Plaintiff seeks a declaratory judgment that defendant failed to comply with the ECOA, the RESPA, and related federal laws. (Id. at 14.) Plaintiff also asks the Court to stop any foreclosure action regarding the property at issue, rescind the mortgage, and award actual and punitive damages. (Id. at 14, 16-17.)

Based on the above facts, plaintiff alleges that defendant violated the ECOA and the RESPA by failing to consider his completed mortgage modification application in a timely manner, by failing to notify him of a negative credit decision within thirty days, and by denying his modification request. (Am. Compl. 5, 11-13, 15.) Plaintiff alleges that foreclosure on the property at issue violates the ECOA,

the FDCPA, and the RESPA. (Id. at 14.) Plaintiff alleges that defendant ignored multiple written requests to adjust the mortgage payments and escrow and ignored his claims that defendant made errors when applying and reporting those payments in violation of the RESPA. (Id. at 16.) Finally, plaintiff claims that defendant violated the ECOA by failing to send him an Adverse Action Notice within thirty days of receiving his complete application. (Id.) [3]

## II. FRIVOLITY REVIEW STANDARD

"[A]ny court of the United States may authorize the commencement . . . of any suit . . . without prepayment of fees or security therefor, by a person who submits an affidavit [averring] . . . that the person is unable to pay such fees or give security therefore." 28 U.S.C. § 1915(a). Pursuant to 28 U.S.C. § 1915(e)(2),

---

[3] The Complaint references the Home Affordable Modification Program ("HAMP"), but does not appear to allege a claim under that statute. (See Am. Compl. 11-2.) Regardless, any such claim would fail as a matter of law because the Eleventh Circuit has held that no private right of action exists under HAMP. See Miller v. Chase Home Fin., LLC, 677 F.3d 1113, 1116 (11th Cir. 2012) (per curiam); see also Curry v. Ocwen Loan Servicing, LLC, 1:17-CV-04450-CAP-AJB, 2018 WL 7575541, at *4 (N.D. Ga. Dec. 21, 2018). Similarly, "Count III" of the Amended Complaint is labeled "(Fraud)" but plaintiff does not appear to allege a state law fraud claim, as the supporting paragraphs allege defendant's actions violated the ECOA and the FDCPA. (See Am. Compl. 15-16.) Therefore, the undersigned only determines whether the Amended Complaint states claims for which relief can be granted under the ECOA, the RESPA, the FDCPA, and the FCRA.

5

however, a federal court is required to dismiss an in forma pauperis complaint if, at any time, the court determines that the action (1) is frivolous or malicious; (2) fails to state a claim on which relief can be granted, or (3) seeks monetary relief against a defendant who is immune from such relief.  Dismissal under that provision, however, does not "prejudice the filing of a paid complaint making the same allegations."  Denton v. Hernandez, 504 U.S. 25, 34 (1992).  "[A] litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."  Neitzke v. Williams, 490 U.S. 319, 324 (1989).

A complaint is deemed frivolous if the Court finds that it lacks an arguable basis in law or fact.  Neitzke, 490 U.S. at 325.  "In accordance with 28 U.S.C. § 1915, the Court will first examine the Plaintiff's Amended Complaint, in its entirety, to determine whether an action should proceed based on the validity of the claim. The Court considers that the Plaintiff is proceeding *pro se* and therefore, reviews the Complaint [] with a less stringent standard than those Complaints written by attorneys."  Monacelli v. Florida, No. 2:08-cv-397-FtM-99SPC, 2008 WL 4165486, at *2 (M.D. Fla. Sept. 5, 2008) (quoting Trawinski v. United Techs., 313 F.3d 1295 (11th Cir. 2002)).

The standard for failing to state a claim under § 1915(e)(2)(B)(ii) is the same as that contained in Federal Rule of Civil Procedure 12(b)(6). Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001). Thus, a complaint "is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." Jones v. Bock, 549 U.S. 199, 215 (2007). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

### A. ECOA Claim

The ECOA prohibits a creditor from discriminating against an applicant "on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)." 15 U.S.C. § 1691(a)(1). Here, the Amended Complaint fails to make any factual allegations from which the Court could "draw the reasonable inference" that plaintiff's loan modification application was denied because of his race. Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555 (court may dismiss complaint if it does not plead

"enough to raise a right to relief above the speculative level"). Even construed liberally, the Amended Complaint fails to state a plausible claim of discrimination in the application process based on <u>any</u> protected characteristic. Notably, plaintiff makes only one reference to his race and does not otherwise allege that any action taken was because of his race. (<u>See generally</u> Am. Compl.)

Therefore, plaintiff's ECOA claim fails as a matter of law and it does not appear that he could amend the Amended Complaint to state a valid claim of discrimination by defendant. <u>Lee v. Alachua Cty., Fla.</u>, 461 F. App'x 859, 860 (11th Cir. 2012) (per curiam) ("a district court need not allow any amendment where amendment would be futile"). Accordingly, the undersigned **RECOMMENDS** that plaintiff's ECOA claim be **DISMISSED**.

**B.     RESPA Claims**

The Amended Complaint alleges that defendant violated the RESPA by failing to process plaintiff's loan modification application timely, and by failing to act on and respond to his written requests alerting defendant to errors in the application or accrual of payments, errors in credit reporting, and the reporting of his mortgage balance and escrow payments. (Am. Compl. 7-9, 11, 13, 15-16.) Plaintiff alleges that defendant repeatedly acknowledged receipt of his completed

8

March 13, 2019 application in writing and verbally, but failed to act on it until May 2019, and did not notify him of the denial until July 2019.  (Id.)

In order to state a claim under the RESPA for failure to respond to a qualified written request, a plaintiff must allege facts showing that:  (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid written request,[4] (3) the defendant failed adequately to respond within the thirty-day statutory period, and (4) the plaintiff is entitled to actual or statutory damages. See 12 U.S.C. § 2605; Arroyo v. Bank of Am., N.A., No. 1:13-CV-1767-RWS, 2013 WL 3785623, at *3 (N.D. Ga. July 18, 2013).

Similarly, Regulation X under the RESPA places certain obligations on mortgage servicers when a borrower submits a loss mitigation application and lays out specific procedures and timelines for submitting, assessing, and evaluating such applications.  See 12 C.F.R. § 1024.41; Clark v. HSBC Bank USA, Nat'l Ass'n, 664 F. App'x 810, 812 (11th Cir. 2016) (per curiam).  Subsection (c) of § 1024.41

---

[4] The RESPA defines a qualified written request as written correspondence, other than notice on a payment coupon, that "(i) . . . enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B)(i)-(ii).

9

governs the evaluation of loss mitigation applications and requires the following upon receipt of a complete application:

> (1) Complete loss mitigation application. Except as provided in paragraph (c)(4)(ii) of this section, if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:
>
> (i) Evaluate the borrower for all loss mitigation options available to the borrower; and
>
> (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. § 1024.41(c).

Additionally, pursuant to § 1024.41(g), if the borrower submits a complete application after notice of intended foreclosure but more than thirty-seven days before a scheduled sale, the servicer is prohibited from proceeding unless:

> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

10

> (2)   The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3)   The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g).

Notwithstanding the above mandates, "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a).  Additionally, if a transferee servicer acquires the servicing of a loan for which a complete loss mitigation application is pending, the new servicer must comply with the above requirements within thirty days of the transfer date.  Id. § 1024.41(k)(3)

The undersigned **REPORTS** that plaintiff has stated a plausible claim that defendant (which appears to service his mortgage) failed to act on, or respond to, plaintiff's qualified written request regarding errors in the application or accrual of payments, the mortgage balance, and escrow payments related to the loan at issue as required by § 2605 of the RESPA.  Likewise, plaintiff has stated a plausible claim that defendant failed to comply with Regulation X of the RESPA regarding his completed March 2019 loan modification application (and possibly subsequent applications).  Accordingly, the undersigned **RECOMMENDS** that plaintiff be permitted to proceed with his RESPA claims.

11

### C. FDCPA Claim

The FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Thus, the FDCPA is generally inapplicable to a "creditor" unless that entity has used a third-party name to collect its own debt.  <u>Kuria v. Palisades Acquisition XVI, LLC</u>, 752 F. Supp. 2d 1293, 1301 (N.D. Ga. 2010); <u>Shedd v. Wells Fargo Bank, N.A.</u>, Civil Action 14-0275-WS-M, 2016 WL 4565775, at *5 n.7 (S.D. Ala. Aug. 31, 2016) (collecting cases); <u>see also</u> <u>Jimenez v. Bank of Am., N.A.</u>, 1:18-CV-04944-MHC-RGV, 2019 WL 2375152, at *6 (N.D. Ga. Jan. 31, 2019) (finding defendant was not subject to the FDCPA because plaintiff failed to allege it was a debt collector as defined by the Act).

The Amended Complaint does not specify which provision of the FDCPA plaintiff alleges that defendant violated and repeatedly alleges that plaintiff obtained the loan at issue from defendant (although defendant appears to be the loan servicer).  (Am. Compl. 2, 6.)

Accepting the facts set forth in the Amended Complaint as true, plaintiff's FDCPA claim against defendant fails as a matter of law because it fails to allege

that defendant is a debt collector. Further amendment would clearly be futile because plaintiff has already been given opportunity to amend. Accordingly, the undersigned **RECOMMENDS** that plaintiff's FDCPA claim be **DISMISSED**.

### D.     FCRA Claim

In Count VI, labeled "(Damages)," the Amended Complaint alleges that the "[FCRA] allows for a penalty of $1,000 per violation" and that defendant "has continuously reported derogatory credit on the account that would have been avoided with a credit extension first discussed in January 2019." (Am. Compl. 17.) Thus, it appears that plaintiff is alleging defendant violated the FCRA by delaying and then denying his loan modification application and by reporting the loan as in arrears.

The FCRA imposes duties on furnishers of credit information. Furnishers are required to: (1) report accurate information to credit reporting agencies regarding consumers, see 15 U.S.C. § 1681s-2(a), and (2) conduct an investigation after receiving notice from a credit reporting agencies of a dispute by a consumer regarding information provided by the furnisher, see id. § 1681s-2(b). However, there is no private right of action against furnishers of information for reporting inaccurate information. See id. § 1681s-2(c)(1). Consumers only have a private right of action against furnishers for a violation of § 1681s-2(b), which requires

13

furnishers to respond promptly to consumer reporting agencies after receiving notices from those agencies of customer disputes.  See Peart v. Shippie, 345 F. App'x 384, 386 (11th Cir. 2009) (per curiam) (stating that the FCRA bars private suits for violations of § 1681s-2(a)); Ware v. Bank of Am. Corp., 9 F. Supp. 3d 1329, 1337 (N.D. Ga. 2014).

Here, plaintiff does not allege that defendant failed to respond promptly to a consumer reporting agency regarding its notice of a disputed debt.  Rather, the Amended Complaint alleges that defendant reported negative information regarding his loan.  Even assuming the credit information furnished by defendant was inaccurate, as discussed above, plaintiff has no private right of action against defendant for a violation of § 1681s-2(a).  Thus, plaintiff's FCRA claim fails as a matter of law and the undersigned **RECOMMENDS** that it be **DISMISSED**.

### E.   Declaratory Judgment

The Amended Complaint asks the Court to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 as to plaintiff's rights under the ECOA and the RESPA, and defendant's compliance with those statutes.  (See Am. Compl. 14.) The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant."  Wilton v. Seven Falls Co., 515 U.S. 277 287 (1995) (citations omitted).  It gives the federal courts competence

to make a declaration of rights, but it does not impose a duty to do so. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942). A court may use its discretion to decline to exercise jurisdiction over a declaratory-judgment action even if subject-matter jurisdiction requirements otherwise are met. Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330-31 (11th Cir. 2005) (per curiam).

Here, when resolving plaintiff's RESPA claim, the Court must determine whether defendant complied with or violated the Act. Thus, his request for a declaration of the parties' rights and liabilities under the RESPA is redundant. Additionally, for the reasons set forth supra Part III.A, plaintiff's ECOA claim fails as a matter of law. See Eisenberg v. Standard Ins. Co., No. 09-80199-CIV, 2009 WL 3667086, at *2 (S.D. Fla. Oct. 26, 2009) ("[A] decision on the merits of the breach of contract claim would render the defendant's request for declaratory judgment moot or redundant." (citation omitted)); Intellectual Capital Partner v. Institutional Credit Partners LLC, No. 08 Civ. 10580(DC), 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) ("[D]eclaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim."). Therefore, in the interest of judicial economy, the undersigned **RECOMMENDS** that plaintiff's claim for a declaratory judgment under the ECOA and the RESPA be **DENIED AS MOOT**.

## IV.  CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's ECOA, FDCPA, and FCRA claims be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief can be granted.  Likewise, the undersigned **RECOMMENDS** that plaintiff's redundant declaratory judgment claim be **DISMISSED AS MOOT**.  Finally, the undersigned **RECOMMENDS** that plaintiff be allowed to proceed on his RESPA claims.

If this Report and Recommendation is adopted, the District Judge can return this matter to the undersigned for an order regarding service of process.

**SO RECOMMENDED**, this 5th day of March, 2020.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE